UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LILLIE MAE McDONALD, | ) | Case No. 8:04-bk-8585-MGW |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | | |
| In re | ) | |
| | ) | |
| EDWARD GLENN McDONALD, | ) | Case No. 8:04-bk-1742-MGW |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

The matters before the Court arise in two related Chapter 13 cases: one in which the debtor is an 83+ year old nursing home resident, Lillie Mae McDonald (hereinafter, "Mrs. McDonald"); in the other case the debtor is Mrs. McDonald's son, Edward Glenn McDonald (hereinafter, "Mr. McDonald").

On October 1, 2004, the Court conducted a hearing on several motions and responses dealing with a dispute between Mr. McDonald and Julie M. Goddard (hereinafter, "Goddard"), who was appointed by the state court, post-petition, to act as emergency temporary guardian for Mrs. McDonald. In general, Mr. McDonald alleges that Goddard violated the automatic stay in both Chapter 13 cases by (a) commencing the guardianship

99

proceeding and (b) placing a "hold" on Mrs. McDonald's bank accounts. Goddard asserts that she is disinterested, did not intend to violate the stay, and requests relief from the automatic stay.[1] Goddard and Mr. McDonald represented themselves at the hearing. Attorney Scott Rosin appeared on behalf of Mrs. McDonald's bankruptcy estate.

The Court has considered the pleadings and exhibits filed in these cases, particularly Document Nos. 33, 34, 38, 48, 49 and 51 in Mrs. McDonald's case and Document Nos. 74, 80 and 90 in Mr. McDonald's case. Also, the Court has considered the parties' representations made at the hearing, which were taken as proffers of evidence. For the reasons set forth below, the Court concludes that: (a) no violation of the automatic stay occurred in Mr. McDonald's case and (b) the stay will be annulled in Mrs. McDonald's case to allow the issues of the guardianship to be adjudicated in state court.

The Court makes the following findings of fact common to all pending motions:

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. Sections 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(G). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

1. Mrs. McDonald is at least 83 years old. She has resided in a nursing home, the Ybor City Healthcare and Rehabilitation Center (hereinafter, "Ybor City Healthcare Center"), since July 2002. She is a retired school-teacher. Her income consists of monthly pension and social security payments of approximately $1,900.51 and $997.00, respectively.

2. Mr. McDonald is also a retired school-teacher. His income consists of monthly pension and social security payments of approximately $1,200 and $600, respectively. His non-debtor wife, Ruby Nell McDonald, has an annual income in excess of $100,000; their combined annual income is approximately $132,000.

3. Mrs. McDonald's pending case was commenced on April 28, 2004; Mr. McDonald's pending case was commenced on January 29, 2004. Each case is the second serial case for each debtor.[2]

---

[2] Mrs. McDonald's first Chapter 13 case was filed on March 6, 2001, immediately prior to a mortgage creditor's motion for summary judgment of foreclosure (Case No. 8:01-bk-3559-MGW). The Court granted the mortgagee relief from the automatic stay. On July 11, 2003, Mr. McDonald filed his first Chapter 13 case, asserting that he had an interest in the residence that was subject to the mortgage (Case No. 8:03-bk-14454-ALP). In Mr. McDonald's case, the mortgagee obtained stay relief and the foreclosure action was again set for trial on January 30, 2004. On January 29, 2004, Mr. McDonald filed his second Chapter 13 case while his first Chapter 13 case was still pending; on March 22, 2004, the Court again granted the

4. Goddard is a "professional guardian" whose full-time occupation is administering court-ordered guardianships. She is presently serving as a guardian in approximately 42 cases.

5. On or about June 15, 2004, while these two Chapter 13 cases were pending, Goddard filed a petition in the Circuit Court for Hillsborough County commencing plenary guardianship proceedings for Mrs. McDonald. She did so after being contacted by the Elder Justice Center (hereinafter, "EJC"), a program of the Circuit Court for Hillsborough County.

6. Goddard was advised by the EJC's representative that Mrs. McDonald was an incapacitated person and that Mr. McDonald was using her monthly income while her own expenses were not being paid, principally the accumulating debt owed to her nursing home.

---

mortgagee relief from stay in that case. On April 28, 2004, this second Chapter 13 case was filed on behalf of Mrs. McDonald. On August 24, 2004, the Court again granted the mortgagee relief from stay in Mrs. McDonald's case (Document No. 48), finding that her second case was filed in "bad faith" and providing that stay relief would continue through any subsequent petition filing.

4

7. Ybor City Healthcare Center may have brought this matter to the attention of the EJC because it was not being paid.

8. Goddard is one of more than a dozen professional guardians that EJC could have contacted. She has not been employed by the nursing home. The Court finds that Goddard is a disinterested person in these matters.

9. On or about June 18, 2004, Circuit Judge Susan Sexton (Probate Division) entered an order appointing Goddard as emergency temporary guardian for Mrs. McDonald. The order included the finding that "property of that person is in danger of being wasted, misappropriated or lost unless immediate action is taken." After being alerted about the pendency of Mrs. McDonald's Chapter 13 case, the Circuit Court refrained from conducting further proceedings to determine whether Mrs. McDonald is incapacitated or whether Goddard will be permanently appointed as her plenary guardian.

10. On or about June 24, 2004, Goddard placed a "hold" on two Bank of America accounts, each in the name of "Lillie Mae McDonald ITF Edward McDonald:" a checking account with $5,001.92 and a savings account with about $17.00. Thereafter, Goddard has collected $2,797.51 per month from Mrs. McDonald's pension and social security payments. Goddard

is now holding about $13,000. Goddard has made no disbursements of these funds.

11. There is no evidence that Mr. McDonald provided any of the funds being held by Goddard.

12. From June 2002, just before Mrs. McDonald moved to the nursing home until June 2004, and during the pendency of her two Chapter 13 cases, about $80,000 (94%) of her income was spent.

13. There is a genuine need for the Circuit Court to determine whether Mrs. McDonald is incapacitated and who will be authorized to represent her interests in her pending Chapter 13 case.

14. Ruby Nell McDonald, Mr. McDonald's non-debtor spouse, has asserted her intention to apply to be appointed guardian of her mother-in-law.[3]

15. Mr. McDonald admitted that he regards his mother's pension and social security income as "family" money.

---

[3] On July 22, 2004, Ruby Nell McDonald filed a motion for relief from stay in her mother-in-law's Chapter 13 case, so that she could apply to state court for appointment as plenary guardian for Lillie Mae McDonald (Document No. 37). The motion was denied for improper service and failure to pay the filing fee (Document No. 39). Ruby Nell McDonald filed a second motion for relief from stay on September 30, 2004 (Document No. 68). This motion will be denied as moot based on the Court's ruling on the matters that were heard on October 1, 2004.

16. The principal assets in Mrs. McDonald's Chapter 13 case are two residential properties: one on East Pocahontas, where Mr. McDonald lives, that is the subject of foreclosure proceedings (see note 2 above); the other on West Lemon Street, where Mrs. McDonald lived before moving to the nursing home. The West Lemon Street property is under a contract of sale for about $83,000; but it is also subject to a first mortgage to Bank of America in the amount of about $42,000 and a lien of about $50,000 to Ybor City Healthcare Center.[4]

17. The principal assets in Mr. McDonald's case are two real properties: a residence on North 40th Street where Ruby Nell McDonald resides, and a five acre parcel of grove land near Plant City, Florida. The mortgage on the North 40th Street property is current.

18. The Court rejects Mr. McDonald's assertion that Goddard's "hold" on his mother's bank accounts is "imperiling" his Chapter 13 case. There is no justification for his use of

---

[4] This Court has entered an order continuing the automatic stay as to the West Lemon Street property on condition that arrearages of $2,245 owed to Bank of America are brought current by November 2004 and the regular monthly payments of $550.48 are made (See Document No. 64).

7

those funds to pay the $217 per month mortgage payment on his five acres near Plant City.

## DISCUSSION

As to Mr. McDonald's case, the Court finds no evidence that Goddard exercised any control over property of his bankruptcy estate. Neither the guardianship, nor the freezing of Mrs. McDonald's bank accounts involved assets of Mr. McDonald's bankruptcy estate. Therefore, there is no violation of the automatic stay in that case.

Goddard has requested relief from the automatic stay in Mrs. McDonald's Chapter 13 case, albeit after she froze Mrs. McDonald's accounts. This Court has broad discretion in determining the scope of the relief to be granted under 11 U.S.C. Section 362(d). *See Dixie Broadcasting, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d 1023, 1026 (11th Cir. 1989); *Ford v. A.C. Loftin (In re Ford)*, 296 B.R. 537, 556 n.40 (Bankr. N.D. Ga. 2003).

There is more than sufficient "cause" to grant Goddard's motion for relief from stay. The alleged incapacity of Mrs. McDonald, the serial Chapter 13 filings, and the suspected impropriety of the prior use of Mrs. McDonald's funds, all warrant the appointment of a disinterested person to protect the funds, render an accounting, and fairly

administer her Chapter 13 case. The Circuit Court is a specialized tribunal that deals with issues of alleged incapacity and guardianship on a regular basis.

The guardianship has had no material adverse impact on Mrs. McDonald's bankruptcy estate. Whoever is ultimately appointed as plenary guardian will have to comply with the obligations of the debtor in the Chapter 13 case.[5] There are sufficient funds being held to cure any deficiencies that have occurred.

Absolutely no purpose would be served, however, in granting only prospective stay relief. The funds would be "unfrozen," only to be refrozen when proceedings resume in the state court.

After considering the serial filings that have occurred and the need for thorough consideration by the Circuit Court of the need for a guardian, this Court concludes that the automatic stay should be annulled as to guardianship

---

[5] It appears that a guardian may administer a Chapter 13 case for the ward. *Cf. In re Healy*, 1989 Bankr. LEXIS 2109, 1 n.1 (Bankr. Md. 1989). For example, as long as the Chapter 13 is pending, the guardian will have to make pre-confirmation payments to the trustee and adequate protection payments to Bank of America (Document No. 64) and will have to propose and confirm a Chapter 13 plan.

proceedings. Mr. McDonald and his wife will have the right to appear and assert their interests.

The Bankruptcy Code expressly grants bankruptcy courts the power to annul the stay. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984); 11 U.S.C. Section 362(d). The Court has considered and applied the legal standards for annulment to the automatic stay set forth in *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21-25 (B.A.P. 9th Cir. 2003); *In re Weber*, 283 B.R. 630, 633 (Bankr. Mass. 2002); and *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir. 1997).

Annulling the stay constitutes a retroactive grant of relief from the stay. *Fjeldsted,* 293 B.R. at 15. The Court hereby validates prior actions taken in the guardianship proceeding and defers to the Circuit Court on the issues of the debtor's incapacity and the choice of guardian.

Therefore, the Court concludes that the stay in Mrs. McDonald's case is hereby annulled as to Circuit Court guardianship proceedings. The Court will deny Mr. McDonald's motions, in both his and his mother's cases, seeking sanctions against Goddard (Document Nos. 74 and 80 in her Chapter 13 case and Document Nos. 38 and 51 in his own case). The Court

will enter separate orders in each case consistent with this opinion.

DONE and ORDERED in Tampa, Florida, this 7 day of October, 2004.

                     _____
                     K. RODNEY MAY
                     United States Bankruptcy Judge

## Certificate Of Service

I transmitted today a copy of this order to the Bankruptcy Noticing Center for mailing to the following persons:

Lillie Mae McDonald, Debtor, 7203 N. 40th Street, Tampa, Florida  33604

Lillie Mae McDonald, Debtor, Ybor City Healthcare, 1709 Taliafero, Room #250, Tampa, Florida  33602

Scott A. Rosin, Esquire, Attorney for Debtor, 5835 Memorial Highway, Suite 6, Tampa, Florida  33615

Edward Glenn McDonald, Debtor, 4010 Pocahontas Avenue, Tampa, Florida  33610

Julie M. Goddard, Emergency Temporary Guardian, Post Office Box 273792, Tampa, Florida  33688

Jill Giordano, 806 E. Jackson Street, Tampa, Florida  33602

Robert McDonald, Jr., 1311 N. Church Avenue, Tampa, Florida  33607

United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, Florida  33602

Dated: OCT 0 7 2004           By: _Wendy B._
                                              Deputy Clerk